Charles D. RAGLAND, Commissioner of
Revenues, Department of Finance and
Administration, State of Arkansas
*v.* William V. FORSYTHE

83-261                                        666 S.W.2d 680

Supreme Court of Arkansas
Opinion delivered March 12, 1984
[Supplemental Opinion on Denial of Rehearing April 30, 1984.*]

*Joe Morphew,* for appellant.

*Friday, Eldredge & Clark,* by: *James M. Saxton,* for
appellee.

*SMITH, DUDLEY and HAYS, JJ., would grant rehearing.

P. A. HOLLINGSWORTH, Justice. The appellee, William V. Forsythe, a Tennessee resident, was denied a music machine operator's permit because he did not meet the residency requirements of Ark. Stat. Ann. § 84-2634 (b) (Repl. 1980). He filed suit against the Department of Finance & Administration claiming that the statute was unconstitutional as applied to nonresidents. The trial court found that the statutory requirement of a one year Arkansas residency is unconstitutional. On appeal we affirm.

Ark. Stat. Ann. § 84-2633 (Repl. 1980) provides that:

> The business of owning, operating or leasing coin operated amusement devices . . . is hereby declared to be a privilege, and it is further declared that the owners, operators and lessor of such machines shall pay a fee for such a privilege . . .

> . . .

> (a) "Amusement devices" means any machine, device or apparatus which provides amusement, diversion or entertainment which is coin operated and includes . . . [m]usic vending phonographs, jukeboxes, and other similar musical devices for entertainment . . .

Section 84-2634 provides:

> No license as required in Section 1 [§ 84-2633] above shall be issued unless:
> (a) The applicant is above the age of twenty-one (21) years.
> (b) The applicant is a resident of the State of Arkansas and has been such for at least one (1) year prior to the date of his application.
> (c) At least one-half (1/2) of any partnership or corporation applicant is owned by a resident of Arkansas who has been such for at least one (1) year prior to application.

The parties stipulated to the fact that the sole basis upon which the Department of Finance & Administration

denied the requested permit was the plaintiff's failure to meet the necessary residency requirements. The plaintiff has complied in full with all other requirements necessary in order to receive a Music Machine Operator's Permit.

The circuit court found that the sole purpose of the Slot and Vending Machines Act (Ark. Stat. Ann. § 84-2601, *et seq.*) (of which this statute is a part) is to impose a license tax on the business of owning, operating or leasing automatic slot and vending machines. He further found that there is no valid relationship between the State's interest in the public health, safety, and welfare, and the residency requirement found in § 84-2634. In a letter opinion, Judge Bogard stated:

> I . . . must find that the Supreme Court's reasoning in *Wometco Services* v. *Gaddy*, 272 Ark. 452, 616 S.W.2d 466 (1981) control. It is interesting to note that in the *Wometco* decision it was held that "the State may regulate businesses which affect public health, safety, and welfare but it may not deprive an individual of his right to condust [sic] lawful business unless it can be shown that such deprivation is reasonably related to the State's interest sought to be protected . . . there is no relationship between the required residency and a valid government interest." In the case at bar the Court can find no valid reason from excluding nonresidents from holding permits for the sale of the equipment covered by Ark. Stat. Ann. § 84-2634 (b) (Repl. 1980). I thus can find no valid reason for having residency as a requirement for issuing the permit covered by the statute and must declare the statute in question to be unconstitutional for the reasons outlined in Mr. Gibbs' brief.

*Wometco* dealt with an application for a permit to sell cigarettes through vending machines. That application was denied to the appellant, a South Carolina corporation licensed to do business in Arkansas. The appellant raised three constitutional arguments: commerce clause, equal protection clause, and the privileges and immunities clause, the same allegations in the case at bar. As Judge Bogard did in this case, we found in *Wometco* that the sole purpose of

the act is to provide a system for the collection of taxes.

We have also held that the legislation in question must bear a reasonable relation to the achievement of the public objective. *Jacks* v. *State,* 219 Ark. 392, 242 S.W.2d 704 (1951). This requirement means that the law must accomplish the declared public end and not impose a burden upon someone not reasonably connected with the cause of the evil.

The appellant cites our decision in *Brown* v. *Cheney, Commissioner,* 233 Ark. 920, 350 S.W.2d 184 (1961) in which we upheld the constitutionality of the residence requirement in the same statute at issue here. In *Brown,* we stated that the owning and operation of a "juke box" is a privilege and that:

> On first impression it might appear that a "juke box" is harmless, and that its owner should be allowed to play it as a common right, but there are other things to be considered. It is common knowledge that coin operated "juke boxes" are not usually placed in the home, but are frequently used in dance halls, drinking places, and amusement spots. . . . The legislature, in regulating "juke boxes" had a right to take all these things into consideration.

*Brown* v. *Cheney, supra,* at 922.

There is nothing in the record to show that this evil is present in the instant case. In *Wometco* we said "the State may regulate business which affects public health, safety, and welfare, but it may not deprive an individual of his right to conduct lawful business unless it can be shown that such deprivation is reasonably related to the State interests sought to be protected." Before we can deprive an individual of his right to conduct business, the deprivation must be reasonably related to the legitimate state interest. Here, there is no relationship between the required one year residency and a valid governmental interest.

The Privilege and Immunities Clause of the U.S. Const. art IV, § 2, cl. 1, provides: "The citizens of each State shall be

entitled to all Privileges and Immunities of Citizens in the Several States." It is a general rule that license legislation that discriminates against nonresidents of a state by refusing to grant them licenses where not required under the police power of the state for the protection of local citizens is void as violating the privileges and immunities and equal protection clauses of the U.S. Constitution. 51 Am. Jur. 2d *Licenses and Permits* § 31 p. 41; 61 A.L.R. 337, 338. The U.S. Supreme Court in *Austin* v. *New Hampshire,* 420 U.S. 656, 662 (1975) held "the Privileges and Immunities Clause, by making noncitizenship or nonresidence an improper basis for locating a special burden, implicates not only the individual's right to nondiscriminatory treatment but also, perhaps more so, the structural balance essential to the concept of federalism."

Therefore, we find that § 84-2634 (b) and (c) are unconstitutional as to the residency requirement contained therein and violate the equal protection and privileges and immunities clauses of the U.S. Constitution. We leave the rest of the provisions of that Statute untouched by this decision.

Affirmed.

SMITH, GEORGE ROSE, DUDLEY, and HAYS, JJ., dissent.

ROBERT H. DUDLEY, Justice, dissenting. The majority holds that Ark. Stat. Ann. § 84-2634(b) and (c) (Repl. 1980) violate the Equal Protection and the Privileges and Immunities Clauses of the Fourteenth Amendment to the Federal Constitution. I dissent from the majority and respectfully suggest that they are in error procedurally as well as substantively.

Procedurally, the majority is mistaken in declaring § 84-2634(c) unconstitutional. That statute was not at issue before the trial court, is not at issue before this Court, and should not be declared unconstitutional in an advisory manner. See *McCuen* v. *Harris,* 271 Ark. 863, 611 S.W.2d 503 (1981).

Substantively, two statutes are properly at issue before us. Both are a part of the Slot and Vending Machines Act. One imposes a privilege fee on coin operated amusement devices. Ark. Stat. Ann. § 84-2633. The other requires a one year residence before an individual can obtain a permit to own or lease coin operated amusement devices. Ark. Stat. Ann. § 84-2634(b). In *Brown* v. *Cheney,* 233 Ark. 920, 350 S.W.2d 184 (1961), *cert. denied* 369 U. S. 796 (1962), we considered the same statutory provisions. In *Brown* we held the provisions were constitutionally valid while in this case the majority holds the same provisions constitutionally invalid. In *Brown* we discussed the relationship between the state's interest in the public health, welfare and safety and the residence requirement. Here, without discussion, the majority holds that no valid relationship exists. Whether a valid relationship exists between the state's interest sought to be protected and the residency requirement is the crucial issue, the very crux of the case.

The correct rule of law falls into place only after the validity of the relationship is decided. The applicable rules of law are easily stated. The Privileges and Immunities Clause does not curtail the power of the state to reasonably discriminate between residents and non-residents if a legitimate state interest is being protected. *Wilmington Star Mining Co.* v. *Fulton,* 205 U.S. 60 (1907). Similarly, the Equal Protection Clause will not be held to interfere with the protection of a legitimate state interest unless there is an invidious discrimination. *City of New Orleans* v. *Dukes,* 427 U.S. 297 (1976). Again, the correct rule of law simply cannot be properly applied until there is a determination of whether a valid relationship exists between the state's interest sought to be protected and the residency requirement.

A valid relationship does exist between the state's interest sought to be protected and the residency requirement. The Slot and Vending Machines Act, in the section at issue, provides that it is a privilege to own, operate or lease coin operated amusement machines and these machines include, but are not limited to, "such games as Radio, Rifles, Miniature Football, Golf, Baseball, Hockey, Bumper, Tennis, Shooting Galleries, Pool Tables, Bowling, Shuffle-

board, Pinball Tables, Marble Tables, Music vending phonographs, jukeboxes, and other similar musical devices for entertainment . . ." Ark. Stat. Ann. § 84-2633. In *Brown* we expressly took notice of a rational connection between coin operated amusement machines and places of entertainment. There we wrote:

> On first impression it might appear that a "juke box" is harmless, and that its owner should be allowed to play it as a common right, but there are other things to be considered. It is common knowledge that coin operated "juke boxes" are not usually placed in the home, but are frequently used in dance halls, drinking places, and amusement spots. Pinball machines, the operation of which is conceded to be a privilege and so declared by statute and this Court, can also be used and operated in a perfectly harmless way, but by association and abuse they often lead to unwholesome results. The legislature, in regulating "juke boxes" had a right to take all these things into consideration.

Since 1915, we have had statutes regulating dance halls, roadhouses or similar places of entertainment where coin operated amusement devices could lead to unwholesome conditions. See Ark. Stat. Ann. § 34-101 (Repl. 1962), and *Hood* v. *State*, 206 Ark. 900, 175 S.W.2d 205 (1943). In the 1937 amendment to § 34-101, the emergency clause expressly referred to the public peace, health and safety. Similarly, in the 1958 amendment the emergency clause expressly referred to public morals as well as the public peace, health and safety.

One of the purposes of the coin operated amusement device act is to regulate closely the licensing of persons who own or operate amusement devices. Such a purpose is reasonably related to the state interests of the public health, safety and welfare. Therefore, the act violates neither the Privileges and Immunities Clause nor the Equal Protection Clause.

The majority fails to grasp the distinction between the facts of this case and the facts of the case of *Wometco Services*

v. *Gaddy,* 272 Ark. 452, 616 S.W.2d 466 (1981). In *Wometco,* the state sought to limit the licensing of tobacco vendors to persons who were residents of this State. We held the statute unconstitutional, but carefully pointed out that this State has no legislation relating to the health, safety and welfare of tobacco vendors or purchasers. Thus, there was no valid state interest protected by the licensing of tobacco vendors. In the case before us there is legislation relating to the health, safety and welfare of persons in places of entertainment where coin operated machines could lead to unwholesome conditions.

I would reverse.

I am authorized to state that Mr. Justice Smith and Mr. Justice Hays join in this opinion.

Supplemental Opinion on Denial of Rehearing
delivered April 30, 1984

P. A. HOLLINGSWORTH, Justice. Appellant's petition for

rehearing raises two points. First, appellant contends that this case is identical in fact and law to the case of *Brown* v. *Cheney, Commissioner*, 233 Ark. 920, 350 S.W.2d 184 (1961), in which we upheld the constitutionality of this same statute, and that we erred therefore in our decision since there is nothing to distinguish this case.

We agree with the appellant that this case is indistinguishable and, therefore, we overrule our decision in *Brown*. In affirming the constitutionality of the same statute in *Brown*, we stated that juke boxes are frequently used "in dance halls, drinking places, and amusement spots," giving the legislature the right to require operators to be Arkansas residents. We now feel that this decision is archaic and is not supported by contemporary standards. We no longer agree that imposing a residency requirement on juke box operators bears a reasonable relation to the achievement of any public objective. Although it did not do so expressly, our opinion in *Wometco Services* v. *Gaddy*, 272 Ark. 452, 616 S.W.2d 466 (1981) provided the basis for our action today. In *Wometco*, we acknowledged the State's ability to regulate business but we stated that the State "may not deprive an individual of his right to conduct lawful business unless . . . such deprivation is reasonably related to the State interests sought to be protected." In *Brown*, we stated: "On first impression it might appear that a 'juke box' is harmless and that its owner should be allowed to play it as a common right. . . ." That is the view we adopt today.

Appellant's second contention is that this Court found both subsections (b) and (c) of Ark. Stat. Ann. § 84-2634 (Repl. 1980) unconstitutional, even though the appeal challenged only subsection (b). Both subsections however, require the applicant for a music machine operator's permit to have been an Arkansas resident for at least one year. Subsection (b) concerns all applicants while subsection (c) addresses partnership or corporation applicants only. If we had found subsection (b) to be unconstitutional and not subsection (c), the result would have been inconsistent. It has long been the rule in Arkansas that it is the duty of this Court to reconcile statutory provisions so as to make them

"consistent, harmonious and sensible." *Shinn* v. *Heath, Director,* 259 Ark. 577, 535 S.W.2d 57 (1976); *McLeod, Commissioner* v. *Santa Fe Trail Transp. Co.,* 205 Ark. 225, 168 S.W.2d 413 (1943); and *Cherry* v. *Leonard,* 189 Ark. 869, 75 S.W.2d 401 (1934).

Rehearing denied.

GEORGE ROSE SMITH, DUDLEY and HAYS, JJ., dissent.