The Honorable Michael Lamoureux State Representative P.O. Box 1064 Russellville, AR 72811-1064
Dear Representative Lamoureux:
You have presented the following questions for my opinion:
 (1) If a city of the first class with a civil service commission adopts an ordinance delegating the authority to appoint and remove the heads of the police and fire department to the city's civil service commission, is the mayor's recommendation required by the civil service commission to exercise the delegated ability to hire and fire the police or fire chiefs?
 (2) Does A.C.A. § 14-42-110(a)(2) conflict with A.C.A. § 14-51-212 or A.C.A. § 14-51-301(c)?
RESPONSE
Question 1 — If a city of the first class with a civil service commissionadopts an ordinance delegating the authority to appoint and remove theheads of the police and fire department to the city's civil servicecommission, is the mayor's recommendation required by the civil servicecommission to exercise the delegated ability to hire and fire the policeor fire chiefs?
It is my opinion that the mayor's recommendation is not required.
The governing statute is A.C.A. § 14-42-110, which states in full:
 (a)(1) Mayors in cities of the first class and second class and incorporated towns shall have the power to appoint and remove all department heads, including city and town marshals when an ordinance has been passed making city and town marshals appointed, unless the city or town council shall, by a two-thirds (2/3) majority of the total membership of the council, vote to override the mayor's action.
 (2) Provided, however, that in cities of the first class and second class with civil service commissions, the governing body of the city may, by ordinance, delegate the authority to appoint and remove the heads of the police and fire departments to the city's civil service commission.
 (b) City managers in cities having a city manager form of government shall have the power to appoint and remove all department heads. In cities with a city manager form of government and with civil service commissions, the civil service commission shall have the power to override the city manager's appointment or removal of the police or fire chief by a majority vote of the total membership of the commission.
 (c) The provisions of this section shall not apply to department heads not under the control of the governing body of the city and shall not apply to cities having a city administrator form of government.
A.C.A. § 14-42-110 (emphasis added).
Section (a)(2) above, which permits cities to grant their civil service commissions the authority to appoint and remove department heads does not state any requirement that the mayor submit recommendations to the commission concerning appointments and removals or that the commission follow any such recommendation from the mayor. Moreover, to read such a requirement into the provision would render the delegation of authority to the civil service commission meaningless. The Arkansas Supreme Court has held that it is inappropriate in interpreting statutory language to give such language an interpretation that would result in an absurdity, or to presume that the legislature enacted a vain and meaningless law.See Yarbrough v. Witty, 336 Ark. 479, 987 S.W.2d 257 (1999); Lawhon FarmServs. v. Brown, 335 Ark. 272, 984 S.W.2d 1 (1998); Citizens To EstablishA Reform Party v. Priest, 325 Ark. 257, 926 S.W.2d 432 (1996); Henson v.Fleet Mortgage Co., 319 Ark. 491, 892 S.W.2d 250 (1995); Neely v. State,317 Ark. 312, 877 S.W.2d 589 (1994); Death and Total Permanent DisabilityTrust Fund v. Whirlpool Corp., 39 Ark. App. 62, 837 S.W.2d 293 (1992). I therefore cannot interpret A.C.A. § 14-42-110(a)(2) to require that the civil service commission follow any recommendation submitted by the mayor concerning the appointment or removal of department heads.
Question 2 — Does A.C.A. § 14-42-110(a)(2) conflict with A.C.A. §14-51-212 or A.C.A. § 14-51-301(c)?
It is my opinion that A.C.A. § 14-42-110(a)(2) does not conflict with A.C.A. § 14-51-212 or A.C.A. § 14-51-301(c).
A.C.A. § 14-51-212 states:
 (a) The powers and duties of every civil service commission established pursuant to this chapter shall be and are hereby expressly limited such that the said commissions shall not have any control nor shall said commissions attempt to exercise any control over the normal and routine day-to-day operations of a police or fire department, directly or indirectly.
 (b) No provision of this chapter shall be construed to provide authorization to said commissions to have such authority.
A.C.A. § 14-51-212.
Similarly, A.C.A. § 14-51-301(c) states:
 (c) The commission shall adopt such rules not inconsistent with this chapter for necessary enforcement of this chapter, but shall not adopt any rule or rules which would authorize any interference with the day-to-day management or operation of a police or fire department.
A.C.A. § 14-51-301(c).
I do not interpret either of the above-quoted statutes to be in conflict with A.C.A. § 14-42-110(a)(2). My conclusion is based upon the fact that both A.C.A. § 14-51-212 and A.C.A. § 14-51-301(c) prohibit civil service commissions from interfering with the day-to-day operations of fire and police departments, whereas A.C.A. § 14-42-110(a)(2) is strictly limited to permitting cities to delegate to civil service commissions the authority to appoint and remove department heads, which is not a day-to-day operation of fire and police departments.
Although the Arkansas Supreme Court has not addressed your explicit question, it has provided a certain amount of guidance for answering this question in interpreting the relevant statutes in other contexts. The court's decisions in these contexts indicate that it does not deem employment-related decisions to constitute day-to-day operations.
For example, in Williams v. Taylor, 311 Ark. 94, 841 S.W.2d 618 (1992), the court rejected an argument (made by the commission itself) concerning interference with the day-to-day operations of a police department. There, the court upheld a lower court's order directing a civil service commission to hold a grievance hearing in accordance with its own rules. The commission had refused to hold a hearing on the grievance of a police officer who had been suspended by the police chief for smoking while on duty. The commission argued that to hold the hearing would constitute an interference with the day-to-day operations of the department, as prohibited by statute. In rejecting this argument, the court stated:
 In a comparable case, we held that the express purpose of the statutes authorizing the establishment of city civil service commissions is to review the employment, discharge, and discipline proceedings of the city fire and police departments, and, therefore, such a review should not be construed as the kind of "interference with the day-to-day management or operation of a fire or police department" that is prohibited by the same statute. Tovey v. City of Jacksonville, 305 Ark. 401, 808 S.W.2d 740 (1991). Likewise, in the case at bar, the Commission's rule requiring a grievance hearing for violating the city's policy does not constitute interference in the daily operations of the police department[.]
Williams v. Taylor, 311 Ark. at 96, citing Tovey v. City ofJacksonville, 305 Ark. 401, 808 S.W.2d 740 (1991).
In Tovey, cited by the Williams court, one of the parties specifically argued that the enactment of A.C.A. § 14-51-301(c) had had the effect of taking away the historic authority of civil service commissions to modify punishment rendered by department chiefs. In response to that argument, the court stated:
 If the General Assembly had intended to eliminate commission authority to modify disciplinary penalties, it would have made such an intention clear as such a change would represent a significant departure from our case law. In sum, the modification of punishment, after a statutory hearing, cannot be construed as "interference with the day-to-day management or operation of a police or fire department."
Tovey v. City of Jacksonville, 305 Ark. 401, 404, 808 S.W.2d 740 (1991).
It is clear from the above-cited authorities that the court does not deem employment-related decisions to constitute day-to-day operations of departments.
On the basis of these authorities, I conclude that there is no conflict between A.C.A. § 14-42-110(a)(2) and A.C.A. § 14-51-212 or A.C.A. §14-51-301(c).
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General