

Cite as 2017 Ark. App. 460

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV–16–1086

| | |
|---|---|
| JACQUELINE R. MCLENNAN<br>APPELLANT | **Opinion Delivered:** September 20, 2017 |
| V. | APPEAL FROM THE PULASKI COUNTY<br>CIRCUIT COURT, TENTH DIVISION<br>[NO. 60JN-15-762] |
| ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES and MINOR<br>CHILDREN | HONORABLE JOYCE WILLIAMS WARREN,<br>JUDGE |
| APPELLEES | AFFIRMED; MOTION TO WITHDRAW<br>GRANTED |

## BRANDON J. HARRISON, Judge

Jacqueline R. McLennan appeals the Pulaski County Circuit Court's decision to terminate her parental rights to her children A.R. and J.M. McLennan's counsel has filed a motion to withdraw and a no-merit brief pursuant to our rules and caselaw, stating that there are no meritorious grounds to support an appeal. Ark. Sup. Ct. R. 6-9 (2016); *Linker-Flores v. Ark. Dep't of Human Servs.*, 359 Ark. 131, 194 S.W.3d 739 (2004). Our court clerk mailed—by restricted delivery, return receipt requested—a certified copy of counsel's motion and brief to McLennan's last-known address informing her of her right to file pro se points for reversal. McLennan has not filed pro se points for reversal, and the Arkansas Department of Human Services (DHS) has not filed a brief. We affirm the court's decision to terminate McLennan's parental rights and grant counsel's motion to withdraw.

I.

J.M. and A.R. were adjudicated dependent-neglected after McLennan failed to take reasonable action to protect A.R. from sexual harm and J.M. from the risk of serious harm

by sexual exploitation. The court found that the DHS caseworker's affidavit was correct and true that (a) A.R. reported that her grandfather asked her to have sex with him, (b) A.R. had no place to live, (c) McLennan was not adequately supervising the children because she was on methamphetamine, and (d) A.R.'s grandmother forced A.R. into prostitution, making her to have sex with a man for money.

In a November 2015 review order, the circuit court found that DHS had not made reasonable efforts to provide family-reunification services and that it failed to provide a foster youth transition plan for A.R., which is required by statute. The court further found that McLennan had not corrected the conditions which caused the juveniles' removal and that she tested positive for THC, opiates, amphetamines, PCP, and benzodiazepines.

In February 2016, the court found that McLennan had partially complied with the case plan, that she was making slow progress, and that DHS was making reasonable efforts. The court entered a permanency-planning order in June 2016 and changed the case-plan goal to adoption. The court noted that A.R. had a verbal altercation with her foster parents and was placed in an emergency shelter that was not an appropriate placement for her. J.M. was doing well. The court found that McLennan's compliance with the case plan was minimal and that she had not completed her psychological examination, individual counseling, or drug-and-alcohol assessment. As for DHS, the court found that it had less than partial compliance with the case plan and court orders. It found that there was no evidence that DHS had provided all the necessary education services for A.R. and that it did not notify the court that A.R. had been moved from the foster home to South Arkansas Youth Services.

Less than a week later, DHS filed a petition for termination of parental rights. Three grounds were alleged against McLennan: (1) twelve-month, failure-to-remedy ground; (2) other factors arising; and (3) aggravated circumstances. *See* Ark. Code Ann. §§ 9–27–341(b)(3)(B)(i)(*a*), 9–27–341(b)(3)(B)(vii)(*a*), and 9–27–341(b)(3)(B)(ix).

Samantha Parker, the DHS caseworker, testified that McLennan should have known her children were at risk for sexual exploitation because her parents (A.R. and J.M.'s grandparents) sexually exploited her when she was a child. She also said that McLennan did not complete the court-ordered psychological evaluation and was dropped from individual counseling for nonattendance and noncompliance. She said that continuing services would not likely result in reunification between the McLennan and her children because she had not taken advantage of any services thus far. On cross-examination, Parker said that DHS had provided McLennan with a bus pass and that she had a job at the Little Rock Zoo. Later, she testified that she did not think it was possible for McLennan to comply with the case plan even if she was given more time and that the children had been out of McLennan's custody almost fifteen months. And she explained that McLennan had not completed individual counseling, which would teach her ways to protect her children and think about who she lets watch them.

DHS Adoption Specialist Jessica Warren testified that the juveniles are adoptable and that the department had identified 53 families "for them together."

McLennan then made a general directed-verdict motion, which the court denied.

For her part, McLennan testified that she had four or five caseworkers throughout the case and that she went to a drug-and-alcohol assessment in July. She said that she had

provided for her children since birth, that she had let her grandmother watch the kids, and that "it just happened that my mother pops up at my grandmother's house" when the event occurred. On cross-examination, she testified that she learned things about the case through A.R. and that "no one would call me or tell my anything" and that if she had more time she could complete the services. Fifteen-year-old A.R. testified that she did not want to be adopted and that she wanted to be with her mom and brother.

In its written order terminating McLennan's parental rights, the court found that the children had been out of McLennan's custody for thirteen months and that she was "no closer to having the juveniles returned to her than she was when they came in to care." Among other things, the court found that there was little likelihood that further services would result in successful reunification and that McLennan had "every opportunity to participate in those services." The court was concerned that McLennan "has taken no responsibility for the juveniles' removal." Among other things, it wrote:

> [M]other and her children love each other and want to be together, but it is mother, and not the children who caused the case to be at the point it is today . . . The Court knows the juveniles do not want to be adopted but they are juveniles—not adults. The Court certainly takes their concerns and wishes into consideration, but the Court, ultimately, has to determine their best interest.

The court terminated McLennan's parental rights on all three grounds that DHS had alleged. Counsel states in her no-merit brief that any argument challenging the statutory grounds for termination or the circuit court's "best interest" findings would be wholly frivolous.

II.

We review termination-of-parental-rights cases de novo. *Cheney v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 209, 396 S.W.3d 272. An order terminating parental rights must be based on a finding by clear and convincing evidence that the sought-after termination is in the children's best interest. The circuit court must consider the likelihood that the children will be adopted if the parent's rights are terminated and the potential harm that could be caused if the children are returned to a parent. *Harper v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 280, 378 S.W.3d 884. The circuit court must also find that one of the grounds stated in the termination statute is satisfied. *Id.* Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction that the allegation has been established. *Pratt v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 399, 413 S.W.3d 261. When the burden of proving a disputed fact is by clear and convincing evidence, we ask whether the circuit court's finding on the disputed fact is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. *Id.*

In dependency-neglect cases, if, after studying the record and researching the law, appellant's counsel determines that the appellant has no meritorious basis for appeal, then counsel may file a no-merit petition and move to withdraw. Ark. Sup. Ct. R. 6-9(i)(1) (2016). The petition must include an argument section that lists all adverse rulings that the parent received at the circuit court level and explain why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(i)(1)(A). The petition must also include an abstract and addendum containing all rulings adverse to the appealing parent that

were made during the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(i)(1)(B).

Counsel correctly states in the argument portion of her brief that only one ground of section 9-27-341(b)(3)(B) must be proved to support a termination. *Sims v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 137, at 7. She is also correct that the court's denial of McLennan's directed-verdict motion is the only adverse ruling within the termination-of-parental-rights hearing apart from the termination ruling itself. Counsel then addresses the twelve-month, failure-to-remedy ground. We agree with counsel that there was sufficient evidence for the court to terminate McLennan's rights on this ground. The children were removed from McLennan's custody and adjudicated dependent-neglected, in part, because McLennan was not adequately supervising them due to drug use. The children had been out of McLennan's custody for more than twelve months. The circuit court did not have to credit McLennan's reasons for why she had failed to participate in reunification services as ordered, which included a psychological evaluation, individual counseling, and drug screens. The court could also credit the caseworker's testimony that DHS had made meaningful efforts to rehabilitate McLennan and that the conditions that brought the children into DHS custody had not been adequately remedied.

Counsel also argues that the court's best-interest finding was not clearly erroneous because return of the juveniles to McLennan would put them at risk of serious harm. The circuit court was concerned about the serious risk of the children being sexually exploited while in McLennan's care and her inability to recognize that danger. The court considered that the children did not want to be adopted, that there was a strong love between

McLennan and A.R. and J.M, but ultimately concluded that it was in the children's best interest for McLennan's parental rights to be terminated. It also considered that there were fifty-three families who had indicated they were willing to consider adopting both children with the same characteristics as A.R. and J.M. Counsel is correct that adoptability and potential harm are merely factors to be considered—they are not elements of the cause of action and need not be established by clear and convincing evidence. *See Chaffin v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 522, at 5, 471 S.W.3d 251, 255.

After reviewing the record and counsel's brief, we agree with counsel that an appeal from the circuit court's decision to terminate McLennan's parental rights would be wholly without merit. Because McLennan's counsel has adequately addressed the sufficiency of the evidence in the no-merit brief and complied with the requirements of *Linker-Flores* and this court's rules, we affirm the court's termination order and grant the motion to withdraw.

Affirmed; motion to withdraw granted.

GLADWIN and KLAPPENBACH, JJ., agree.

*Kimberly Eden*, for appellant.

One brief only.